FRANKLIN O. HALL AND SYBLE L. HALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hall v. Comm'r
Docket No. 17928-89
United States Tax Court
T.C. Memo 1991-133; 1991 Tax Ct. Memo LEXIS 152; 61 T.C.M. (CCH) 2236; T.C.M. (RIA) 91133; 13 Employee Benefits Cas. (BNA) 1868; March 25, 1991, Filed *152 Decision will be entered for the respondent. Thomas R. Buckner, for the petitioners. Amy Dyar Seals, for the respondent. SHIELDS, Judge. SHIELDS
MEMORANDUM OPINION In a deficiency notice dated April 17, 1989, respondent determined a deficiency in petitioners' Federal income tax for 1985 in the amount of $ 18,379. The only issue is whether an election to contribute to an individual retirement account part of a lump-sum distribution from a qualified plan may be revoked by petitioners in order to entitle them to report the entire distribution as income under the 10-year averaging method provided by section 402(e). [1]
The facts have been fully stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners resided in Memphis, *153 Tennessee, at the time they filed their petition. Petitioners filed a joint Federal income tax return for 1985 on April 15, 1986. Unless otherwise indicated, all references to petitioner in the singular are to Franklin O. Hall. Petitioner was born on March 29, 1935. He completed seven years of elementary education before dropping out of school in the eighth grade. In 1952 petitioner commenced employment with Ivers Pond Piano Company, which was merged in 1969 with Aeolian Pianos, Inc. (Aeolian). Aeolian closed in 1985 following a bankruptcy proceeding in which petitioner's employment and that of all other employees was terminated. Petitioner was a participant in the Employees' Retirement Trust of Aeolian (Retirement Trust), which was a qualified plan under the Internal Revenue Code. When his employment was terminated in 1985 petitioner received from the retirement trust a lump-sum distribution in the amount of $ 96,008.98, of which he contributed $ 10,000 to an individual retirement account (IRA). Petitioner's basis in the lump-sum distribution was $ 523.98. On or about February 10, 1986, petitioners' 1985 return was prepared by O. M. Allen, an accountant. The return was *154 filed April 15, 1986. The return included a Form 4972, used in reporting lump-sum distributions as ordinary income subject to the 10-year averaging method provided by section 402(e). On the Form 4972 petitioners elected not to treat any part of the lump-sum distribution received from Aeolian as capital gain. Instead they reported as ordinary income using the 10-year averaging method $ 85,485, which represented the $ 96,008.98 lump-sum distribution received by Mr. Hall less his $ 10,000 contribution to the IRA and his basis in the distribution of $ 523.98. On April 17, 1989, respondent issued a deficiency notice in which he determined that petitioners were not entitled to use the 10-year averaging method with respect to that part of the lump-sum distribution which was not contributed to the IRA. On July 14, 1989, petitioners filed with respondent an amended income tax return for 1985 in which they attempted to revoke their earlier election to contribute $ 10,000 of the lump-sum distribution to the IRA and to report the entire distribution of $ 96,008.98 as ordinary income using the 10-year averaging method of section 402(e). The amended return reflected an additional tax liability *155 of $ 1,732 which petitioners remitted with the amended return. At the time petitioners' income tax return for 1985 was prepared on February 10, 1986, and at the time the return was filed on April 15, 1986, neither petitioners nor their tax return preparer had any knowledge of section 1.402(a)(5)-1T, Temporary Income Tax Regs., 51 Fed. Reg. 4320 (1986), which was adopted January 29, 1986 and published in the Federal Register on February 4, 1986. The issue in this case is whether petitioners may revoke their election to contribute to the IRA a part of the lump-sum distribution and use the 10-year averaging method to report the entire distribution as ordinary income. Generally, all distributions from qualified plans, other than amounts representing a return of a participant's after-tax voluntary contributions, are includable in the gross income of the employee or his beneficiary when received. Sec. 402(a)(1). A lump-sum distribution from a qualified plan may, however, be eligible for preferential tax treatment. One such method of favorable tax treatment is referred to as 10-year averaging. Sec. 402(e)(1)(C) prior to the Tax Reform Act of 1986, Pub. L. 99-514, 100 *156 Stat. 2085. [2] The effect of 10-year averaging is that a lump-sum distribution is taxed as if it had been received evenly over a 10-year period rather than as having been received entirely in one year. Section 1.402(a)(5)-1T, Q & A-4, Temporary Income Tax Regs., 51 Fed. Reg. 4320 (Feb. 4, 1986), provides that an election to contribute to an IRA all or part of a partial, and in some cases a total, distribution is irrevocable if the return on which such election is made is filed on or after March 21, 1986.[3]Section 402(a)(6)(C) provides that if any part of a lump-sum distribution is contributed to an eligible retirement plan, which includes an IRA, then 10-year averaging may not be used to report as income the balance of the distribution. *157 Respondent contends that section 402(a)(6)(C) and section 1.402(a)(5)-1T, Q & A-4, Temporary Income Tax Regs., prohibit petitioners from revoking their election to contribute a part of their lump-sum distribution to the IRA; and consequently, petitioners are not entitled to use 10-year averaging. Petitioners contend that they are not bound by section 1.402(a)(5)-1T, Temporary Income Tax Regs., and therefore their amended return revoked their election to contribute a part of the lump-sum distribution to the IRA and constituted an election to use the 10-year averaging method in reporting the entire distribution. First, petitioners contend that it is unreasonable and unfair to require them to comply with section 1.402(a)(5)-1T, Temporary Income Tax Regs., because the temporary regulation was not published until February 4, 1986, and they and other taxpayers similarly situated were given only until March 21, 1986, or 44 days, within which to file returns containing revocable elections. Second, petitioners contend that section 1.402(a)(5)-1T, Temporary Income Tax Regs., exceeds respondent's rule-making authority since the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, *158 does not contain any provision dealing with a contribution to an IRA of all or a part of a lump-sum distribution. Third, petitioners contend that the effect of section 1.402(a)(5)-1T, Temporary Income Tax Regs., is arbitrary and capricious since by providing that IRA contribution elections made on returns filed on or after March 21, 1986, are irrevocable, taxpayers who are similarly situated will be treated differently for 1985 tax purposes based on the date on which they filed their income tax returns for 1985. Fourth, petitioners contend that they relied on their income tax advisor and would not have made an IRA contribution if they had been made aware of section 402(a)(6)(C) or section 1.402(a)(5)-1T, Q & A-4, Temporary Income Tax Regs. Fifth, petitioners rely on a line of cases which have permitted taxpayers in analogous situations to file amended returns revoking prior elections. Sixth, petitioners contend that respondent should be estopped from asserting that petitioners cannot revoke their election to contribute to the IRA part of the lump-sum distribution since respondent accepted petitioners' amended return and the accompanying tax payment. Both parties agree that prior *159 to the promulgation of section 1.402(a)(5)-1T, Temporary Income Tax Regs., there was nothing in the Internal Revenue Code, Treasury regulations, revenue rulings, revenue procedures, or reported cases which either explicitly permitted or prohibited an individual from revoking an election to contribute to an IRA under section 402(a)(5)(A) all or part of a lump-sum distribution. However, petitioners direct our attention to three Private Letter Rulings (PLR's) issued prior to the promulgation of section 1.402(a)(5)-1T, Temporary Income Tax Regs., in which the Service permitted a taxpayer to revoke an election made in an earlier year to contribute to an IRA all or part of a lump-sum distribution and to file an amended return reporting the entire lump-sum distribution as income utilizing the 10-year averaging method. PLR's 7945043 (Aug. 8, 1979), 7945030 (Aug. 9, 1979), and 8106033 (Nov. 13, 1980). Private letter rulings do not constitute judicial precedent. However, they "do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws" and may provide "evidence" that such construction "is compelled by the language of *160 the statute." Woods Investment Co. v. Commissioner, 85 T.C. 274, 281 n.15 (1985), citing Hanover Bank v. Commissioner, 369 U.S. 672, 686-687, 8 L. Ed. 2d 187, 82 S. Ct. 1080 (1962); sec. 6110(j)(3). In Rowan Cos. v. United States, 452 U.S. 247, 261 n.17, 68 L. Ed. 2d 814, 101 S. Ct. 2288 (1981), the Supreme Court considered PLR's as evidence of respondent's position, notwithstanding the enactment in 1976 of the provision in section 6110(j)(3) that PLR's have no precedential force. Each of the three letter rulings cited by petitioners relies on either section 11.402(e)(4)(B)-1, Temporary ERISA Regs., 40 Fed. Reg. 1016 (Jan. 6, 1975) or section 1.402(e)-3(c), Proposed Income Tax Regs., 40 Fed. Reg. 18810 (Apr. 30, 1975), as authority for its conclusion.[4] Both of these regulations provide in effect that an individual may make an election to use the 10-year averaging method to report a lump-sum distribution as income for a taxable year at any time before the expiration of the period for claiming a refund or credit for such taxable year. *161 As a general rule temporary regulations are effective upon publication and remain in effect until replaced by final regulations. H. Rept. 100-1104 (Conf.), at 217 (1988). To date the Treasury Department has not revoked or withdrawn section 11.402(e)(4)(B)-1, Temporary ERISA Regs., nor section 1.402(e)-3(c), Proposed Income Tax Regs. Consequently, even if we concluded, as contended by petitioners, that section 1.402(a)(5)-1T, Temporary Income Tax Regs., is invalid and that they should be permitted to rely on section 11.402(e)(4)(B)-1, Temporary ERISA Regs., in their attempt to revoke the election to contribute part of the lump-sum distribution to the IRA, their election would be untimely because section 11.402(e)(4)(B)-1, Temporary ERISA Regs., provides that an election to use 10-year averaging must be made before the expiration of the period prescribed by section 6511(a). Petitioners rely on a number of very early cases in which it was held that respondent's rejection of an amended return was sufficiently arbitrary and unreasonable to support a judicial determination that the amended return should have been accepted by respondent. See Lucas v. Sterling Oil & Gas Co., 62 F.2d 951 (6th Cir. 1933), *162 affg. 51 F.2d 413 (W.D. Ky. 1931); Patent Royalties Corp. v. Commissioner, 65 F.2d 580 (2d Cir. 1933), revg. 25 B.T.A. 1032 (1932); Morrow, Becker & Ewing, Inc. v. Commissioner, 57 F.2d 1 (5th Cir. 1932), revg. 21 B.T.A. 1013 (1930). However, these early cases are factually distinguishable from the case before us. The same is true with respect to Meyer's Estate v. Commissioner, 200 F.2d 592 (5th Cir. 1952), revg. 15 T.C. 850 (1950), the only relatively current decision relied upon by petitioners. In other words, Meyer's Estate is distinguishable because it involved a mistake of fact while the present case involves a mistake of law. We conclude, therefore, that petitioners are not entitled to revoke their election to contribute to the IRA part of the lump-sum distribution. Hence they are not entitled to use 10-year averaging in reporting the lump-sum distribution. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Ten-year averaging was repealed by the Tax Reform Act of 1986 and replaced with five-year averaging. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1122(a)(2), 100 Stat. 2085, 2466.↩
3. The relevant parts of section 1.402(a)(5)-1T, Temporary Income Tax Regs., 51 Fed. Reg. 4320 (Feb. 4, 1986), read as follows: Q-3: Are there any other requirements applicable to rollovers of partial distributions? A-3: Yes. Section 402(a)(5)(D)(i)(III) requires the employee to elect, in conformance with Treasury regulations, to treat a contribution of a partial distribution to an IRA as a rollover contribution. An election is made by designating, in writing, to the trustee or issuer of the IRA at the time of the contribution that the contribution is to be treated as a rollover contribution. This requirement of a written designation to the trustee or issuer of the IRA is effective for contributions paid to the trustee or issuer of the IRA after March 20, 1986. For contributions paid to the trustee or issuer before March 21, 1986, an election is made by computing the individual's income tax liability on the income tax return for the taxable year in which the distribution occurs in a manner consistent with not including the distribution (or portion thereof) in gross income. Both such elections are irrevocable, except that an election made on an income tax return filed before March 21, 1986, is revocable. Q-4: Does the election requirement apply to rollovers of qualified total distributions or rollover contributions described in section 402(a)(5) or (7), 403(a)(4), 403(b)(8), 405(d)(3), or 408(d)(3) to individual retirement accounts and annuities (IRAs)?
A-4: Yes. No amounts may be treated as a rollover contribution to an IRA under section 402(a)(5), 402(a)(7), 403(a)(4), 403(b)(8), 405(d)(3) (as amended by section 491(c) of the TRA of 1984), or 408(d)(3) unless the requirements described in Q&A 3 of this section are satisfied. Thus, once any portion of a total distribution is irrevocably designated as a rollover contribution, such distribution is not taxable under section 402 or 403 and, therefore, is not eligible for the special capital gains and separate tax treatment under section 402(a) and (e)↩. Election requirements for rollover contributions to IRAs described in this Q&A 4 are subject to the same effective date rules set forth in Q&A 3. [Emphasis added.]
4. Except for minor variations not relevant here, section 11.402(e)(4)(B)-1, Temporary ERISA Regs., 40 Fed. Reg. 1016 (Jan. 6, 1975), is the same as section 1.402(e)-3, Proposed Income Tax Regs., 40 Fed. Reg. 18810 (Apr. 30, 1975), which reads as follows: (a) In general. For purposes of sections 402, 403, and this section, an amount which is described in section 402(e)(4)(A) and which is not an annuity contract may be treated as a lump sum distribution under section 402(e)(4)(A) only if the taxpayer elects for the taxable year to have all such amounts received during such year so treated. Not more than one election may be made under this section with respect to an employee after such employee has attained age 59 1/2. (b) Taxpayers eligible to make the election. Individuals, estates, and trusts are the only taxpayers eligible to make the election provided by this section. In the case of a lump sum distribution made with respect to an employee to 2 or more trusts, the election provided by this section shall be made by the employee or by the personal representative of a deceased employee. (c) Procedure for making election - (1) Time and scope of election. An election under this section shall be made for each taxable year to which such election is to apply. The election shall be made before the expiration of the period (including extensions thereof) prescribed in section 6511 for making a claim for credit or refund of the assessed tax imposed by chapter 1 of subtitle A of the Code for such taxable year. [Emphasis added.] (2) Manner of making election. An election by the taxpayer with respect to a taxable year shall be made by filing Form 4972 as a part of the taxpayer's income tax return or amended return for the taxable year. (3) Revocation of election↩. An election made pursuant to this section may be revoked within the time prescribed in subparagraph (1) of this paragraph for making an election, only if there is filed, within such time, an amended income tax return for such taxable year, which includes a statement revoking the election and is accompanied by payment of any tax attributable to the revocation. If an election for a taxable year is revoked, another election may be made for that taxable year under paragraphs (c)(1) and (2) of this section.